# IN THE COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

| | |
|---|---|
| MC PROPERTIES, INC., | ) C/A NO. 03A01-9807-CH-00216 |
| | ) |
| Plaintiff-Appellee, | ) HAMILTON CHANCERY |
| | ) |
| v. | ) HON. HOWELL N. PEOPLES, |
| | ) CHANCELLOR |
| THE CITY OF CHATTANOOGA and | ) |
| THE CHATTANOOGA CITY | ) |
| COUNCIL, | ) REVERSED |
| | ) AND |
| Defendants-Appellants. | ) REMANDED |

FILED

January 28, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

JOHN R. ANDERSON and HARRY R. CASH, GRANT, KONVALINKA & HARRISON, P.C., Chattanooga, for Plaintiff-Appellee.

PHILLIP A. NOBLETT and LAWRENCE W. KELLY, Chattanooga, for Defendants-Appellants.


## O P I N I O N


Franks, J.


The City Council denied plaintiff's request to rezone 10.2 acres of a certain tract of land on and near Shallowford Road in Chattanooga. Plaintiff filed a petition for certiorari in the Chancery Court and after trial, the Chancellor ordered rezoning of the property. The City has appealed to this court.

The issues raised on appeal are:

1.  Whether the Trial Court erred in admitting evidence and testimony which had not been presented to the City Council.

2.  Whether the Trial Court erred in finding that the action of the City Council was illegal, arbitrary or capricious.

3.  Whether the denial of the rezoning request constitutes an unconstitutional taking of property.

Zoning cases have historically entered the court system through two

different procedures, i.e., a writ of certiorari and a declaratory judgment action. Tennessee Code Annotated §27-8-101 addressing the common law writ of certiorari, provides that the "writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when in the judgment of the court, there is no other plain, speedy or adequate remedy." The Code also provides for a statutory writ of certiorari: "anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have said order or judgment reviewed by the courts." T.C.A. §27-9-101. The language of the Code appears to limit the writ to judicial determinations by lower tribunals or administrative agencies, making the writ appropriate for such matters as appeals from determinations made by a Board of Zoning Appeals, which are administrative, but inappropriate for such matters as challenges to the enactment of ordinances or resolutions which create or amend zoning regulations, which are legislative. *Fallin v. Knox County Bd. Of Comm'rs.*, 656 S.W.2d 338, 342 (Tenn. 1983). The Tennessee Supreme Court has said that "an action for declaratory judgment, as provided by T.C.A. §§29-14-101--29-14-113, rather than a petition for certiorari is the proper remedy to be employed by one who seeks to invalidate an ordinance, resolution or other legislative action of county, city or other municipal legislative authority enacting or amending zoning legislation." *Id.* The Court, however, went on to say that "where, as here, the plaintiff mistakenly employs the remedy of certiorari the court may treat the action as one for declaratory judgment and proceed accordingly, rather than dismiss the action." *Id.*

The review by courts in a declaratory judgment action examining the validity of a zoning ordinance is limited. Zoning has long been accepted as a valid exercise of the police power. *See Spencer Sturla Co. V. City of Memphis*, 155 Tenn.

2

70, 290 S.W. 608, 612-613 (1927). When faced with such an exercise of police power

the Supreme Court has stated:

> Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion and, in cases where the validity of a zoning ordinance is *fairly debatable*, the court cannot substitute its judgment for that of the legislative authority. If there is a *rational or justifiable basis* for the enactment and it does not violate any state statute or positive constitutional guaranty, *the wisdom of the zoning regulation is a matter exclusively for legislative determination.* In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or is plainly contrary to the zoning laws. (Emphasis supplied).

*Fallin*, 656 S.W.2d at 342-343, *also see Davidson County v. Rogers,* 184 Tenn. 327,

198 S.W.2d 812-814-815 (1947); *Family Golf of Nashville, Inc. V. The Metropolitan*

*Gov't of Nashville and Davidson County*, 964 S.W.2d 254, 260 (Tenn. App. 1997);

*Carter v. Adams*, 928 S.W.2d 39, 40 (Tenn. App. 1996); *Copeland v. City of*

*Chattanooga*, 866 S.W.2d 565, 567 (Tenn. App. 1993).

Though there are procedural differences between common law certiorari

and declaratory judgment, any distinction in the application of the substantive law to

legislative and administrative actions has "dissipated with the passage of time."

*McAllen v. City of Memphis,* 786 S.W.2d 633, 641 (Tenn. 1990). The Tennessee

Supreme Court has found:

> The "fairly debatable, rational basis," as applied to legislative acts, and the "illegal, arbitrary and capricious" standard relative to administrative acts are essentially the same. In either instance, the court's primary resolve is to refrain from substituting its judgment for that of the local government body. An action will be invalidated only if it constitutes an abuse of discretion. If "any possible reason" exists justifying the action, it will be upheld. (*Id.*)

Whether there is sufficient evidence to support the zoning action is a

question of law, making appellate review *de novo* without a presumption of

3

correctness. *Carter v. Adams,* 928 S.W.2d 39, 40 (Tenn. App. 1996). Tennessee Rules of Appellate Procedure 13.

Though the Trial Court did not state it was treating the matter as a declaratory judgment action, that is essentially what it did by admitting additional evidence. It allowed in evidence what it considered relevant to any of the matters that were discussed by the members of the City Council, instead of limiting the evidence to the record of the hearing.

Under the declaratory judgment provisions, the admission of new evidence is not limited as it is under a writ of certiorari. The statute provides that "[w]hen a proceeding under this chapter involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." T.C.A. §29-14-108. It also provides that the chapter "is to be liberally construed and administered." T.C.A. §29-14-113. Any evidence that is relevant to the court's responsibility of determining whether the zoning decision is "fairly debatable" or whether there is "any possible reason" for the zoning regulation should be admitted. That is what the Trial Judge did in this case, and it was proper to do so.

We conclude the Trial Court was in error in finding that the action of the City Council was illegal, arbitrary or capricious. The Supreme Court has determined that "'fairly debatable, rational basis,' as applied to legislative acts, and the 'illegal, arbitrary and capricious' standard relative to administrative acts are essentially the same. In either instance, the court's primary resolve is to refrain from substituting its judgment for that of the local governmental body. An action will be invalidated only if it constitutes an abuse of discretion. If 'any possible reason' exists justifying the action, it will be upheld." *McAllen*, 786 S.W.2d at 641.

The City advanced several reasons why the Council properly denied the

4

change of zoning. They may not be good reasons, but this is not for the Court to determine so long as the issue is fairly debatable. Barry Bennett, the Director of Current Planning and Operations of the Regional Planning Agency, offered testimony that the staff of the Planning Agency recommended denial because under the current policy, Shallowford Road has been established as the most definable stopping point for the northward expansion of commercial development in the area, and the area south of Shallowford Road is all commercial and the area north of Shalllowford Road is predominantly residential. He explained that the policy recommends R-4 and O-1 type zones on the frontage properties, which would be low density, low traffic office or institutional zones which would serve as a buffer between the commercial areas to the south and the residential areas to the north.[1] The staff also wanted to set a precedent, because if the properties in question were rezoned, Mr. Bennett anticipated rezoning requests for another 70 or 75 acres of property in the area currently zoned residential. He stated that the street system could not accommodate the traffic that would be generated by 70 more acres of commercial development, and that improvements would need to be made to the roads before any rezoning takes place. Bennett believes that the area will go commercial eventually, but he wants the improvements to the roads to be made first. Bennett testified that the staff also considers the impact on people who live in the area and people who shop in the area. This potential rezoning, along with other potential rezoning, would have a significant impact on the residents and shoppers until the new infrastructure is in place.[2]

---

[1] The plaintiff did not request R-4 or O-1 zones in this case.

[2] Bennett conceded on cross-examination that the City does not always adhere to the plans it creates for development. He observed:

> You know, and it's our hope that they adhere to the plans, but sometimes that isn't always the case.

The record demonstrates that the City has not adhered to its plans for the development of this

Even though plaintiff in this case offered evidence that it could accommodate any additional traffic, it might generate, limiting commercial development in this area until the appropriate infrastructure can be built is a fairly debatable issue. While the City Council has previously allowed rezoning, without having proper infrastructure in place, and the fact that the City Council often goes against the recommendations of the planning agency staff, the Council has the power to zone property in its discretion, so long as it is rationally related to the welfare of the people. Waiting to rezone property until the road system can handle the additional traffic, is in the power of the legislative body, and if the Council's decision diminishes the value of property, it is in their legislative power to do so, as well. *See Nichols v. Tullahoma Open Door, Inc.*, 640 S.W.2d 13 (Tenn. App. 1982). The legislative body does not have to enact zoning regulations which would provide the best use of the property. It has broad discretion to zone as it feels proper, which it exercised in this case.

Though the property in question should, and probably will, eventually be zoned commercial, the issue is fairly debatable at the present time, and we may not substitute our judgment for the City Council. We find no basis to overturn their decision.

Finally, the Trial Court dismissed plaintiff's claim of an unconstitutional taking under inverse condemnation, before the hearing on this matter. It does relate to our prior determination that the issue to rezone was a fairly debatable issue.

This Court has previously held that zoning regulations may not deprive property owners of the beneficial use of their property. *Campbell v. Nance*, 555 S.W.2d 407 (Tenn. App. 1976); *Bayside Warehouse Co. v. City of Memphis*, 63 Tenn.

---

area, and such deviations needlessly raise the specter of favoritism and diminish the legitimacy of such plans.

App. 268, 470 S.W.2d 375 (1971). These cases are distinguishable from the present case. In *Campbell*, the property in question was zoned residential and was surrounded by property zoned commercial. The property never had a home on it and was not suitable for residential purposes in its condition. The entire area had become commercially oriented, and based upon these factors, the Court determined that to leave the lot zoned residential would deprive the owners of the beneficial use of their property.

Similarly, in *Bayside*, the City Council of the City of Memphis rezoned twenty-three acres of land owned by Bayside Warehouse Company from M-2 Industrial to C-3 Commercial. The property was located on Mud Island. The Court found that the property was ideally suited for river-oriented industry, because it had virtually no access by land and there were no plans to build access in the near future. In its then condition it was not at all suitable for commercial use, so commercial zoning would deprive the owners of any beneficial use whatsoever. *Id.* at 377.

Here, the property owners, while not receiving the most beneficial use of their property, do have a beneficial use. The land consists of a church and two residential homeowners. The church is currently using the property as a church. It wants to sell the property so that it can move to a larger tract of land down the street, but it is still able to use its property. Only one residential homeowner testified. He testified that the area has changed drastically since he moved there, and that he does not want to live there any longer. He said he has not received offers to buy his property from anyone other than commercial developers. Though he has not received any offers, he did not testify that he has actively tried to sell his property as office property or residential property. The record shows available beneficial uses of the properties, contrasted with *Campbell* and *Bayside*. Accordingly, there is no basis to hold that there has been an unconstitutional taking absent rezoning.

7

For the foregoing reasons, the decision of the Trial Court vacating the denial of the rezoning petition by the City is reversed, and the decision of the City Council is reinstated.

The cost of the appeal is assessed to appellee, and the cause remanded.

_____

_____
Herschel P. Franks, J.

CONCUR:

_____
Don T. McMurray, J.

_____
Charles D. Susano, Jr., J.