Albert **HEMONTOLOR,**
**Petitioner/Appellant,**

v.

**WILSON COUNTY BOARD OF ZONING APPEALS, Respondent/Appellee**

and

**Mrs. Delane Kolbe, Derrell Reese, Bill Hodges, Miss Millie Burford, and Dr. & Mrs. Robert H. Badger, Respondents/Appellees.**

Court of Appeals of Tennessee,
Western Section, at Nashville.

Feb. 18, 1994.

Application for Permission to Appeal Denied by Supreme Court July 18, 1994.

**614**

Thomas C. Binkley, Jeffrey Zager, Trabue, Sturdivant & Dewitt, Nashville, and John William Martin, Lebanon, for petitioner/appellant.

Michael R. Jennings, Lebanon, for respondent/appellee Wilson County Bd. of Zoning Appeals.

William E. Farmer, Lebanon, for respondents/appellees Delane Kolbe, et al.

FARMER, Judge.

Appellant, Albert Hemontolor, (Hemontolor) applied to the Wilson County Board of Zoning Appeals (Board) for permission to use his property [1] as a sanitary landfill. On July 6, 1990, the Board denied the application "based on testimony, private landfill could bring in out-of-state medical waste, road conditions and public safety on roads." [sic] Hemontolor filed a petition for writ of certiorari requesting that the Board be directed to allow him to use his property in such manner. The chancellor granted the petition and ordered the Board to "approve the requested use subject to [Hemontolor] meeting all reasonable conditions as identified by the ... Board; ...."

Pursuant to the chancellor's decree, the Board approved Hemontolor's application subject to seven conditions. The following five are at issue on this appeal:

(1) That prior to commencement of the operation of the landfill that Cedar Grove Road, the affected parts of Belotes Ferry Rd. and those culverts and bridges expected to be affected by this proposed use be constructed to a standard capable of carrying the heavy truck traffic expected to serve the proposed landfill. This would necessarily involve, to the greatest extent possible, the elimination of blind spots from the many hills and curves along Cedar Grove Road. This construction standard should be to the satisfaction of, and be acceptable to, the Wilson County Road Commission.

(2) That applicant (appear before) the Wilson County Road Commission for a determination of the amount of bond for possible future damage to the road, bridges, and culverts along Cedar Grove Road and that part of Belotes Ferry Road from its intersection with Cedar Grove Road to U.S. Hwy. 231. This bond should then be posted with the Road Commission in sufficient amount to cover the costs of any needed repairs to the road, culverts and bridges caused by this proposed use.

(3) A reasonable buffer of approximately 250' should be maintained along Cedar Grove Road.

(4) A landscaped berm of adequate height to screen this proposed use from Cedar Grove Road should be installed along the margin of Cedar Grove Road, behind the 250' buffer.

(6) The active landfill site should be designed and maintained so as to prevent surface water runoff from leaving the landfill site.

Hemontolor filed a second petition for writ of certiorari and mandamus requesting that the Board be directed to remove these condi-

---

1. The record reveals that Hemontolor either owns or holds valid options on this land composed of 159 acres. The property, zoned A-1 Agricultural, consists of three parcels and is lo-

cated on Cedar Grove Road in Wilson County. It adjoins property currently utilized as a county landfill.

tions from its approval of his application.[2] This appeal is from the chancellor's denial of the petition upon determining that the Board acted with authority in imposing the conditions which were "valid and reasonable."

Hemontolor presents the following issues for our review:

1. Whether the Wilson County Board of Zoning Appeals lacks the statutory authority to condition Albert Hemontolor's lawful use of his property upon the improvement of an off-site, public roadway?

2. Whether mandatory improvement of an off-site, public roadway as a condition to the lawful use of private property is unduly burdensome and therefore unlawful?

3. Whether Section 6.40.04 of the Wilson County Zoning Regulations is unconstitutionally vague?

4. Whether the Administrative Record fails to support the Wilson County Board of Zoning Appeals' imposition of conditions upon Albert Hemontolor's lawful use of his property?

Appellees present the following additional issues:

1. Whether the lower Court erred on April 8, 1991 when it overruled the previous ruling of the Wilson County Board of Zoning Appeals issued on July 6, 1990 wherein the Appeals Board denied the [Hemontolor] request on appeal to use the subject agricultural land for a sanitary landfill?

2. Whether the lower Court erred in failing to join the Wilson County Regional Solid Waste Authority as a party defendant in this matter?

3. Whether the lower Court erred in failing to join the Commissioner of the Tennessee Department of Environment and Conservation as a party defendant in this matter?

**2.** Delane Kolbe, Derrell Reese, Bill Hodges, Millie Burford, and Dr. and Mrs. Robert Badger were allowed to intervene by order entered January 9, 1992. All are residents of the Cedar Grove Community and own property either adjacent to or near the subject property.

**3.** The chancellor's decree granting Hemontolor's first petition for writ of certiorari was entered April 25, 1991 and states:

4. Whether the lower Court erred in failing to receive additional evidence as permitted by *Tennessee Code Annotated* Section 27–9–111?

■ Our scope of review, and that of the trial court, under a common law writ of certiorari, is to determine whether the Board exceeded its jurisdiction, followed unlawful procedure, acted arbitrarily or capriciously or acted without material evidence to support its decision. *Massey v. Shelby County Retirement Bd.,* 813 S.W.2d 462, 464 (Tenn.App. 1991); *Brooks v. Fisher,* 705 S.W.2d 135, 136 (Tenn.App.1985).

Sections 5.20.02–.03 of the Wilson County Zoning Regulations identify "uses" in an agricultural district as those "permitted" and those "permissible on appeal." Section 5.20.03 states:

The following uses may be permissible on appeal by the [Board] in accordance with provisions contained in Section 6.40 of these Regulations.

. . . .

R. Sanitary landfill subject to meeting all requirements of a registered solid waste disposal site as defined in Chapter 1200–1–7 of the Rules of the Tennessee Department of Public Health and Environment and any criteria identified by Wilson County officials;[3]

Section 6.40.04 identifies the Board's "powers" to include hearing and deciding "requests for special exceptions, such as uses permitted on appeal. . . ." Subsection B allows the Board to "require reasonable conditions be met concerning . . . access to property, . . . and any other reasonable requirement the Board deems necessary to protect the surrounding property . . . and shall require a sufficient bond for damage to roads if required by the Road Commission. . . ."

"[Hemontolor] has met all of the requirements for the permit as set forth in said Zoning Regulations, and has applied to the State of Tennessee, Department of Health and Environment, for a state permit as provided in Chapter 1200–1–7. . . .

That Wilson County officials have identified no other criteria for the issuance of the permit. . . ."

■ We first address the condition that improvements be made to Cedar Grove Road. In effect, this condition requires Hemontolor to either expend the funds for such improvements or forego using his property in the manner desired, and that for which it appears most suitable, until the county makes these improvements. Road superintendent, Val Kelley, testified that the cost to improve the road to sufficiency would be between $750,000 and $1,000,000. The improvement of this road will unquestionably benefit adjacent property owners, many of whom testified as to their discontent with the road's present inadequacies. The Board is limited by its own regulations to impose only "reasonable" conditions. We find nothing reasonable in requiring a private citizen to maintain a public road at his sole expense. Consequently, we hold that the Board arbitrarily and capriciously exceeded its authority in imposing this condition.

■ The second condition requires Hemontolor to post a bond for possible future damages to the road. As heretofore mentioned, the county zoning regulations authorize the Board to require a sufficient bond "if required by the Road Commission." The chancellor found that Cedar Grove Road "is certainly not adequate to handle double axle type vehicles" and that "the condition of the road now is not adequate for a landfill, for heavy trucks to be operating on this road." We find a preponderance of the evidence to support this finding. Mr. Hemontolor stated that the operation of his property as a sanitary landfill would require the use of "heavy trucks." William Griggs, the designer of the proposed landfill, stated that it would be designed to receive 100 to 175 tons of solid waste disposal per day which would involve ten to twelve "packer" trucks. John Patterson, superintendent of the county landfill, testified that it is visited by approximately 50 to 75 trucks per day. He stated that one-third is of the "pick-up capacity" and two-thirds are trucks 25 to 42 cubic yards. He stated that it would be reasonable for a "fair percentage" of these trucks to visit the proposed landfill, only a short distance away, when in operation. Further, Mr. Kelley testified that base failures on roads indicate "heavy loading."

■ The question of whether or not there is any material evidence to support the Board's decision is one of law, to be decided by the reviewing court upon an examination of the evidence introduced before the Board. *Watts v. Civil Serv. Bd. for Columbia,* 606 S.W.2d 274, 277 (Tenn.1980). We hold that the Board's decision to impose condition two is supported by material evidence. The Board may reasonably require Hemontolor to post a bond sufficient to satisfy the damage resulting from heavy trucks traveling to and from the site.

■ Condition three requires Hemontolor to maintain a 250 foot buffer along Cedar Grove Road. The only testimony on this issue comes from Mr. Griggs who was asked to agree that a 250 foot buffer "is not an unreasonable condition" to which he responded, "I believe it would be . . . ." He testified that the state regulations, written by the Division of Solid Waste Management, require a buffer of 100 feet. He stated that these regulations were first presented as proposals to the public for comment. This led to extensive revisions, subsequent public hearings and further revisions before they were ultimately reissued. Griggs continued, "the current regulations are the result of [a two year process]. And so to take that and say, . . . we don't agree with this number, we're going to change it here, . . . unless there's a site specific reason, I think that the regulations are pretty good." We conclude that the Board's imposition of this condition is not supported by material evidence.

■ The fourth condition requires "a landscaped berm of adequate height . . . ." We find absolutely no evidence introduced before the Board on this matter and, therefore, cannot uphold its imposition.

■ Condition six requires the prevention of surface water runoff. The only testimony pertaining to this condition was that of Rick Heckle, a geotechnical engineer. When asked whether he discovered anything on the site that would lead to great concern about danger from leaching or run-off from the landfill, he replied, "[n]o more than any typical site. There's no springs or anything of

that nature on the site." Heckle also stated that "current regulations are much more stringent, and there are requirements as far as design for the liners, for leachate collection system, for installation of ground water—monitoring wells, any monitoring of leachate from the landfill. All this is governed by the current regulations which are more stringent than the ones the current landfill is operating under."[4] We hold that the Board's imposition of condition six is not supported by material evidence.

We reject Appellant's argument that Section 6.40.04 of the zoning regulations is unconstitutionally vague.

■ Appellees contend that the lower court erred in failing to join the Wilson County Regional Solid Waste Authority (Authority) and the Commissioner of the Tennessee Department of Environment and Conservation (Commissioner) as necessary parties. A motion was filed requesting the joinder of the Authority because "[t]he position of the Hemontolor property allows [Hemontolor] to have access to Dump Road, if the [Authority] would grant an easement across its property. The granting of that easement would allow [Hemontolor] to reach his proposed landfill without using Cedar Grove Road for heavy truck traffic." Appellees moved that the Commissioner be joined because the Tennessee Department of Environment and Conservation was considering issuing a permit for the solid waste facility and had scheduled a public hearing. Further, the department "refuses to consider the access questions which have been a major concern in this litigation...."

Hemontolor correctly cites *Brewer v. Lawson*, 569 S.W.2d 856 (Tenn.App.1978), for the following proposition:

> A proper party is not the same as a necessary or indispensable party. Only a party who will be directly affected by a decree and whose interest is not represented by any other party to the litigation is an indispensable or necessary party, that is, one without which no valid decree may be

entered settling the rights between the parties that are before the Court. *Brewer*, 569 S.W.2d at 858. We find no error by the trial court in failing to join the aforementioned parties.

■ Appellees question whether the lower court erred in overruling the initial decision of the Board to deny Hemontolor's application. Appellees apparently argue that the court's decree was not final because the chancellor ruled that the Board's denial constituted "an excess of authority" and made no determination that the Board acted "arbitrarily, capriciously or illegally." Also, they insist that the chancellor made no finding of fact and that a transcript of the initial hearing was not before the trial court. The record does not support this latter contention. The chancellor's decree states that the court reviewed, inter alia, the "transcript of the testimony offered at said hearing; ...." We find no merit in Appellees' argument regarding the express language utilized by the court. As the chancellor's decree constitutes a final judgment from which no appeal was taken, we conclude that our review of this decision is foreclosed. "A judgment of a court having jurisdiction of the persons and subject matter, is conclusive between the parties as to the matter in controversy in the case, and cannot be inquired into or questioned, if unappealed from, unless it was obtained by fraud, accident, or mistake." *Crawford v. Crawford*, 2 Tenn.Cas. 156 (1876).

■ The final issue raised by Appellees regards the lower court's refusal to receive additional evidence, specifically the testimony of Barry Sulkin. T.C.A. § 27–9–111(b) provides: "The hearing shall be on the proof introduced before the board or commission contained in the transcript, and upon such other evidence as either party may desire to introduce." Courts have limited the introduction of additional evidence to the question of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily or capriciously. *See Watts*, 606 S.W.2d at 277; *Massey*, 813 S.W.2d at 465. Appellees, by offer

---

4. This testimony occurred at the original hearing before the Board on July 6, 1990. By agreement, the transcript and evidence at this hearing was accepted into the September 6, 1991 pro-

ceedings "for the limited purpose of the question that's before [the Board], and that is reasonable conditions."

of proof, established that Mr. Sulkin, an environmental consultant, would testify that Hemontolor had not met all of the state's rules and regulations for operating a sanitary landfill. We find that the evidence sought to be introduced addresses the validity or propriety of the chancery court's initial decision entered April 25, 1991. It does not concern the reasonableness of the conditions imposed by the Board nor does it tend to prove whether the Board's actions were arbitrary or capricious or in excess of its jurisdiction. We hold this issue without merit.

In view of our decision, the remaining issues are pretermitted.

The judgment of the lower court is affirmed in part, reversed in part and remanded. Costs are taxed one-half to Appellant and one-half to Appellees, for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.